VIKING CONSTRUCTION COMPANY *v.* TOWN PLANNING COMMISSION OF THE TOWN OF SIMSBURY ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued April 10—decision released June 17, 1980

*Palmer S. McGee, Jr.,* with whom were *James J. Tancredi* and, on the brief, *Sharon S. Tisher,* for the appellant (defendant).

*Morton C. Hansen, Jr.,* with whom, on the brief, were *Joseph J. Fauliso* and *Morton N. Katz,* for the appellee (plaintiff).

PARSKEY, J. In this action of mandamus, the sole issue, which is dispositive of this appeal, is whether, under the provisions of General Statutes § 8-26 (Rev. to 1977), the subdivision application submitted by the plaintiff was approved by operation of law because of lapse of time.

On June 3, 1977, the plaintiff submitted to the defendant town planning commission (hereinafter the commission), on the form prescribed, an application and plans for a small subdivision in Simsbury designated as "Sand Hill Estates." The application, fee and plans were accepted by the commission's clerk who thereupon sent the application and plans

to the town planner for review to determine whether the application and supporting papers complied with the commission's regulations.

On June 13, 1977, at the first regularly scheduled meeting of the commission after the filing of the application with the clerk, the clerk advised the commission that the application had been received, but the commission neither viewed nor considered it. The clerk also advised that the application was in the hands of the town planner for review prior to official submission to the commission.

The next meeting of the commission was June 28, 1977. The agenda for that meeting indicates that a report would be made and that the abutting owners would be advised of a presentation on July 11. The matter was reviewed. Specific recommendations for changes were made and it was noted as being on the agenda for July 11 and in fact did appear on that agenda. At the July 11 meeting the matter was considered and various people spoke. The minutes of this meeting recite that a representative of the plaintiff was present to "formally submit" a subdivision plan of Sand Hill Estates.

On July 26, 1977, the commission voted not to hold a public hearing on the plaintiff's application but scheduled an open meeting of the commission on August 8, at which time comments from interested persons would be heard. On August 8, the open meeting was held on the subdivision, there was a lot of discussion and the matter was tabled until the meeting of September 12, when the application was considered by the commission and disapproved.

General Statutes § 8-26 (Rev. to 1977) provides in pertinent part: "All plans for subdivisions . . .

shall be submitted to the commission with an application in the form to be prescribed by it. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. . . . The commission shall approve, modify and approve, or disapprove any subdivision . . . application or maps and plans submitted therewith . . . within sixty-five days after the public hearing thereon or, if no public hearing is held, within sixty-five days after the submission . . . . The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand . . . ." Section 8-26d (Rev. to 1977) provides in pertinent part: "In all matters wherein a formal application . . . must be submitted to a planning commission, the date of receipt of such application . . . shall be the date of the next regularly scheduled meeting of such commission, immediately following the date of application . . . at which such application . . . is officially received by such commission, or thirty-five days from the date of application, . . . whichever is sooner." September 12, the date of the disapproval, was ninety-one days from June 13, the date of the receipt of the application.

Sections 8-26 and 8-26d establish a definitive timetable during which planning and zoning commissions must act. *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 544, 244 A.2d 391 (1968). Failure by the commission to act within this time frame results in the approval of the subdivision application by operation of law. The time clock contains both a delayed action or trigger time, and a running time. In cases where no public hearing is scheduled on the application, the maximum time allowed is

100 days[1] from the date of the application, consisting of thirty-five days of trigger time and sixty-five days of running time. If the regularly scheduled meeting of the commission next after the date of filing occurs within the thirty-five day period and the commission dispenses with a public hearing in such case, the trigger time will be shortened accordingly.

The defendant's contention that the phrase "officially received" gives the commission discretion to determine when it wishes to receive a subdivision application is without merit. The receipt of an application form by an administrative body involves the performance of a ministerial act. *Pluhowsky* v. *New Haven,* 151 Conn. 337, 347, 197 A.2d 645 (1964). It does not require the exercise of discretion. The phrase "officially received" seeks to differentiate between those situations where the planning commission holds regularly scheduled meetings and those when it does not. In the former case, the filed application is treated for the purpose of activating the running time clock as of the date of the regular meeting next following the date of application whereas in the latter case the date of filing activates the trigger mechanism. In both cases the activation is prescribed by statute.

In the present case, where no public hearing was held, the sixty-five day period within which the commission had to act on the application began to run on June 13, 1977, the date of the first regularly scheduled meeting after the date of the application. Because pursuant to § 8-26 the subdivision plan had

---

[1] Because no public hearing was scheduled in this case we need not consider whether the 100 days is a maximum time limit in every instance.

been approved by operation of law long before the commission took its action on September 12, and because under the statute the plaintiff had a clear legal right to the issuance of a certificate to that effect, the trial court was justified in rendering a judgment of mandamus. *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 518, 356 A.2d 109 (1975).

There is no error.

In this opinion the other judges concurred.